IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KARLA PAVON LOPEZ,<br><br>Defendant. | Case No.: 25–MJ-70022-MAG<br><br>**ORDER MODIFYING CONDITIONS OF RELEASE** |

Defendant Karla Pavon-Lopez is charged with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) for the distribution of a mixture and substance containing a detectable amount of methamphetamine. [Dkt. 1]. On January 10, 2025, the Court held a detention hearing and heard arguments from counsel and submissions from Pretrial Services and, at the conclusion of the hearing, the Court released Defendant subject to certain conditions of release. [Dkt. 9]. One of the conditions of release is that the Defendant "must not use or possess any narcotic or other controlled substance without a legal prescription." *Id.* A further condition of release was that the Defendant must not travel outside the Northern District of California. *Id.* Per the Parties' stipulation, the Court expanded the travel restriction on January 24, 2025 to allow the Defendant to travel to the Eastern District of California so that she can take her automobile to her mechanic, do other errands in Vallejo, California, and drive through the Eastern District as necessary. [Dkt. 11].

Since that time, Defendant Lopez has submitted numerous urine tests, over many months, which have yielded positive test results for fentanyl. Per a Violation Memo from Pretrial Services dated March 20, 2025, Defendant Lopez submitted a urine sample on February 10, 2025 and on February 27, 2025, both of which tested positive for fentanyl. [Dkt. 18 at 1]. Per a Violation Memo

dated April 30, 2025, Defendant Lopez submitted urine samples on March 13, 2025; March 19, 2025, and March 25, 2025, all of which tested positive for fentanyl. [Dkt. 23 at 1-2]. Per a Violation Memo dated May 20, 2025, Defendant Lopez submitted urine samples on April 24, 2025 and April 30, 2025 which were positive for fentanyl. [Dkt. 31 at 1]. And in the most recent Violation Memo dated June 10, 2025, Defendant Lopez submitted urine tests positive for fentanyl on May 20, 2025. [Dkt. 35]. All of these test results were confirmed positive by the national testing laboratory. At the hearing on June 17, 2025, Pretrial Services reported verbally that Defendant Lopez submitted a urine sample on June 2, 2025 which the national lab reported as positive for fentanyl on June 15 (although the in-office test by Pretrial Services did not yield a positive result, which Pretrial Services believes may be the result of a difference in threshold detection levels for the testing strips used by Pretrial Services as opposed to the more scientifically sensitive and rigorous testing done by the laboratory).

The Court held bail review hearings after each of the Violation Memos listed above, and at each hearing, Defendant Lopez denied using fentanyl. [Dkts. 20, 25, and 33]. Defendant's counsel argued over the months variously that other potential causes may have existed for Defendant's positive test results: a former boyfriend who was using fentanyl; prescribed medications Defendant was taking; supplemental Defendant was taking; the potential that Defendant's former boyfriend tainted or contaminated Defendant's medication containers. These potential causes do not explain the ongoing, repeated, multiple, positive test results: the former boyfriend no longer lives with Defendant and has not been involved in Defendant's living situation for months now; Defendant stopped taking the supplements months ago; and Defendant confirmed with her medical provider that the medications she was taking should not cause false positives.

Defendant's counsel's argument at the June 17 hearing is that the detected levels of fentanyl in the lab results are currently unknown and speculates that they may potentially be so low as to support the inference that Defendant is not actively taking fentanyl, but rather is somehow being inadvertently exposed in minute (yet detectable) amounts. Because this argument depends on the actual levels of fentanyl detected by the laboratory tests, the Court **GRANTS** Defendant's request for Pretrial Services to request and obtain from the laboratory the level of fentanyl detected by at least the most recent positive urine test (and any others prior levels from prior positive test results if they are available).

1  Pretrial Services is **ORDERED** to provide the level data from the lab to counsel for all the Parties
2  promptly upon receipt.
3        Under 18 U.S.C. § 3142(c)(3), the Court "may at any time amend the order to impose
4  additional or different conditions of release."  Further, under 18 U.S.C. § 3142(f), the Court may
5  reopen a detention hearing "at any time before trial" if the Court finds "that information exists that was
6  not known to the movant at the time of the hearing and that has a material bearing on the issue whether
7  there are conditions of release that will reasonably assure the appearance of such person as required
8  and the safety of any other person and the community."  Here, the evidence of repeated positive
9  fentanyl tests, confirmed by the testing laboratory, over multiple months, is obviously information not
10 known to anyone at the time of the original detention hearing in January 2025.  The Court issued
11 verbal directives on these issues at the June 17 hearing, and this Order memorializes those directives
12 for the record.  The Court incorporates by reference the transcript and recording of the June 17 hearing
13 and its comments at that hearing.
14       In light of the record of repeated, ongoing violations of conditions of release (the multiple
15 positive fentanyl test results) and pursuant to applicable legal standards, the Court **REVOKES** the
16 previously granted modifications that allowed Defendant to travel to parts of the Eastern District of
17 California for limited purposes [Dkt. 11].  Further, the Court exercises its full discretion and
18 **MODIFIES** the conditions of release to restrict Defendant to at-home detention/lockdown (at 1747
19 Hellings Ave. in Richmond, CA) with electronic ankle monitoring beginning June 17, 2025, except for
20 medical or mental health appointments, substance abuse treatment, attorney visits, court appearances,
21 or any other travel outside the home pre-approved by Pretrial Services.  The Court **PRE-APPROVES**
22 Defendant's medical appointment on June 26, 2025.
23       At the June 17 hearing, Defendant's counsel indicated she was trying to find a Spanish-speaking
24 residential substance abuse treatment center in Contra Costa County for Defendant to enter.  The Court
25 appreciates Defendant's counsel's efforts and directs her to continue those efforts and to contact
26 Spanish-speaking residential treatment facilities in Contra Costa County (or elsewhere) with her client
27 to assist with the phone intake and screening process.  The Court further **ORDERS** Defendant's
28 counsel to submit a status report via email to PHKpo@cand.uscourts.gov (with a copy to counsel for

ORDER MODIFYING CONDITIONS OF RELEASE
 *PAVON LOPEZ*, CR 25–MJ-70022- MAG

the government and Pretrial Services) by June 23, 2025, with an update on the current status of the intake process. The Court will direct the Parties further after reviewing that status report.

A further Status Conference was set for July 17, 2025 before Judge Tse. [Dkt. 30]. Per the Parties' request, that Status Conference is hereby reassigned and will be held before the undersigned on July 17, 2025 at 2 pm in Courtroom F. Counsel for the Parties shall be prepared to discuss status regarding residential treatment. Counsel for the Parties shall also confer with Pretrial Services in advance and be prepared to discuss (and make arrangements for) any agreed-upon interviews or other processes as appropriate for altering any other conditions of release or other preparations needed in connection with the diversion agreement, if any at that time.

Nothing in this Order prevents the Parties from reaching agreement to further alter conditions of release and submit those agreements by Stipulation and Proposed Order to the Court for consideration.

**IT IS SO ORDERED.**

Date:   June 17, 2025

PETER H. KANG
United States Magistrate Judge